**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George HOELKER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Douglas Paul LINN,
Defendant-Appellant.**

Nos. 84–5040, 84–5113.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1985.

Decided July 17, 1985.

Richard Marmaro, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Michael T. Kenney, Santa Ana, Cal., David A. Elden, Los Angeles, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, SNEED and SKOPIL, Circuit Judges.

PER CURIAM:

George Hoelker, a special agent with the federal Drug Enforcement Administration, and Douglas Paul Linn, an ex-deputy sheriff with the Los Angeles County Sheriff's Department, appeal convictions of various cocaine-related and extortion charges. We affirm.

The indictment contained eleven counts. Count 1 alleged a conspiracy beginning in March 1982 to possess with intent to distribute and to distribute a "multi-pound" (2 kilo) quantity of cocaine. It was alleged that as part of the conspiracy, defendants on March 11 and 12 distributed small quantities of the cocaine as samples to named prospective purchasers. Count 2 alleged possession of the cocaine. Counts 3 through 8 alleged possession and distribution of the samples. Count 9 alleged a conspiracy from January to May 1982 to violate the Hobbs Act, 18 U.S.C. § 1951 (1982), by extorting money from a named victim (Lang) by threats of violence; Count 10 alleged the underlying substantive violation of section 1951. Count 11 charged Hoelker with solicitation of a bribe in April 1982 in violation of 18 U.S.C. § 201(c)(3) (1982).

I.

Appellants contend the trial court erred in denying their pretrial motion to dismiss the Hobbs Act counts. The trial court dismissed these counts after trial, but defendants argue failure to dismiss before trial permitted introduction of prejudicial and extraneous testimony.

"The elements of a Hobbs Act violation are [1] extortion and [2] a nexus with interstate commerce." *United States v. Zemek*, 634 F.2d 1159, 1173 (9th Cir.1980). Both were charged in adequate detail in the indictment.

[1] " '[E]xtortion' means the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence, or fear...." 18 U.S.C. § 1951(b)(2). The indictment alleged that Hoelker and Linn "threatened Jack Lang with physical violence in order to force Lang to sign [a life] insurance policy application" which "named defendant Hoelker as the beneficiary."

[2] "The effect on interstate commerce need only be *de minimis* ... [and] need only be 'probable' or 'potential.' " *Zemek*, 634 F.2d at 1173 n. 20. The indictment alleged the policy in question was "to be issued by the Kentucky Central Life Insurance Company of Lexington, Kentucky, a business engaged in interstate commerce"; that Linn had submitted the application to the company; and that he had contacted the company to have the policy approved.

We reject appellants' argument that prosecution under the Hobbs Act was precluded by the McCarran-Ferguson Act, 15 U.S.C. § 1012(a) (1982), which provides that "the business of insurance ... shall be subject to the laws of the several States which relate to the regulation or taxation of such business."

The latter statute, appellants argue, relinquished jurisdiction over the business of insurance to the states. Thus, appellants assert, "[a] transaction within the business of insurance is not a transaction in 'commerce' " within the meaning of the Hobbs Act.

The Hobbs Act does not exempt the business of insurance. The Act explicitly applies to "all commerce between any point in a State ... and any point outside thereof." 18 U.S.C. § 1951(b)(3). *Cf. United States v. Gill*, 490 F.2d 233, 237 (7th Cir.1973) ("[S]tate preemption in regulating liquor does not preclude the federal government from prohibiting extortion which affects interstate commerce under authority of the Commerce Clause."). Allegations that defendants' scheme involved interstate communication and affected a company engaged in interstate commerce were sufficient to require denial of a motion to dismiss. *Cf. United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir.1982) (per curiam).

■ We also reject defendants' argument that no "property" was taken from Lang since it appears from the face of the indictment that Hoelker had a bona fide claim to the money sought to be obtained. "The concept of property under the Hobbs Act has not been limited to physical or tangible 'things.' The right to make business decisions ... free from wrongful coercion is a protected property right." *Zemek*, 634 F.2d at 1174. The property right involved in this case is Lang's right to make personal and business decisions about the purchase of life insurance on his own life free of threats and coercion.

We do not consider Hoelker's argument that the trial court erred in failing to dismiss the bribery charge before trial. Hoelker did not ask the district court to do so. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983).

## II.

■ Hoelker complains of the denial of his motion to be tried separately from Linn. The motion was based solely on the ground that Linn would testify favorably to Hoelker but only at a separate trial. Severance is rarely granted on this ground, *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978), and denial in this case was not an abuse of discretion.

Hoelker's assertion that Linn would waive his fifth amendment rights and testify was supported only by the conclusory hearsay statement of Linn's counsel as to statements Linn had made to him. *See United States v. Boscia*, 573 F.2d 827, 832 (3d Cir.1978). According to Linn's counsel, Linn's testimony would have repeated Hoelker's version of the facts and therefore would have been cumulative. *See United States v. Finkelstein*, 526 F.2d 517, 524 (2d Cir.1975). Linn's testimony would have been subject to damaging impeachment. His testimony at an earlier separate trial for narcotics offenses had been rejected by a jury which had just convicted him both of the narcotics offenses and of perjury. *See United States v. Boscia*, 573 F.2d at 833. The loss of judicial economy in trying the two defendants on multiple charges arising out of their joint conduct would have been substantial. *See Finkelstein*, 526 F.2d at 524. Moreover, Hoelker's motion was untimely; it was not made until the day before the scheduled trial date and two months after the date for filing pre-trial motions. *United States v. Butler*, 611 F.2d 1066, 1071 (5th Cir.1980).

## III.

■ The district court acted within its discretion in denying Hoelker's motion to sever the Hobbs Act counts from the narcotics charges.

The attempted extortion and the drug offenses were logically related by motive, *United States v. Ford*, 632 F.2d 1354, 1372 (9th Cir.1980), and "arose out of the same series of transactions," *id.* at 1371. According to the government's theory, Hoelker was in serious financial trouble and was in danger of losing his house because of a losing investment in Lang's auto racing enterprise. Hoelker's need for funds explained why Hoelker became involved in plans to sell cocaine and to coerce Lang into signing an insurance policy on his life naming Hoelker as the beneficiary. *See United States v. Tierney*, 424 F.2d 643, 646–47 (9th Cir.1970). The extortion and the narcotics offenses occurred during the same brief time span, involved many of the same participants, and were connected by a large area of overlapping proof. *See Unit-*

ed States v. Anderson, 642 F.2d 281, 284 (9th Cir.1981).

Hoelker failed to establish that joint trial of the offenses was "manifestly prejudicial" to him for reasons much like those discussed in the opinion in the similar case of *United States v. Irvine,* 756 F.2d 708, 712 (9th Cir.1985). The trial judge carefully instructed the jury on each count of the indictment, and twice admonished the jury that each count contained a distinct charge that must be separately analyzed. Absent some indication to the contrary, we must assume the jury followed the judge's instructions. *United States v. Sanford,* 673 F.2d 1070, 1072–73 (9th Cir.1982) (*quoting United States v. Johnson,* 618 F.2d 60, 62 (9th Cir.1980) ).

### IV.

Hoelker argues testimony that Linn furnished cocaine to two teenage girls and to Linn's ex-wife when she was 21, even if admissible as to Linn, was irrelevant and unfairly prejudicial as to Hoelker since he was not involved in these distributions.

The trial judge instructed the jury that the challenged testimony was admissible only as to Linn and could not be considered against Hoelker, and repeated the instruction at the conclusion of the trial. Absent evidence to the contrary, we assume the jury adhered to these instructions. *Sanford,* 673 F.2d at 1072.

Hoelker also objects to testimony by Cleon Mickey Weaver regarding Hoelker's distribution of cocaine to Weaver in 1978 and 1979, three to four years before the offenses charged, allegedly to compensate Weaver for acting as an informant for Hoelker. Proof of these distributions was relevant to demonstrate Hoelker's willingness to deal in illegal drugs and to explain why he trusted Weaver and attempted to draw him into the conspiracy. We cannot say the trial court abused its "wide discretion" under Fed.R.Evid. 403 to determine that the probative value of Weaver's testimony outweighed its prejudicial character. *United States v. Nadler,* 698 F.2d 995, 1000 (9th Cir.1983).

Nor are we prepared to second-guess the trial judge's decision that the testimony of Hopkins, Bolter and Pyryezstov regarding Linn's distributions of cocaine to Bolter and Hopkins from 1980 to 1982 was more probative than prejudicial. This testimony was relevant to show the background and development of the conspiracy, *Nadler,* 698 F.2d at 1000; to explain the relationship of the parties to the narcotics transactions; and to put the charges in context. *United States v. McCown,* 711 F.2d 1441, 1453 (9th Cir. 1983).

### V.

Appellants object to references during the prosecutor's opening statement to a "criminal plan" between Hoelker and Linn to "murder" Lang. The prosecutor's remarks were a permissible preview of the charges and the evidence to be presented at trial. *See United States v. Correa-Arroyave,* 721 F.2d 792, 795 (11th Cir.1983). The prosecutor did not say Hoelker and Linn were charged with conspiracy to murder, but simply that proof of the extortion counts would include details of appellants' plan to force Lang to sign an insurance policy application naming Hoelker as the beneficiary. The evidence at trial fulfilled the prosecutor's promise. Several witnesses testified to a plan by Hoelker and Linn to kill Lang so Hoelker could obtain the proceeds of the insurance policy for which Lang had been forced to apply.

Hoelker objects to the prosecutor's statements in closing argument that Hoelker's defense was "perjurious," and a "fraud." In context the prosecutor's reference was to Hoelker's version of the facts while testifying, not to the conduct of defense counsel, and was supported by the government's rebuttal evidence. Prosecutors may "voice doubt about the veracity of a defendant who has taken the stand" where such comments are supported by the record. *United States v. Birges,* 723 F.2d 666, 671–72 & n. 1 (9th Cir.1984). *See also Falsia,* 724 F.2d at 1342–43.

The prosecutor's statement that the defense had engaged in "character assassination" was "fair advocacy" after the defense had "opened the door," *Falsia*, 724 F.2d at 1342–43, by casting doubt on the credibility of government witnesses on cross-examination and in closing argument. The trial judge meticulously instructed the jury that the statements of counsel were not evidence, a point also made by the prosecutor in his closing argument. Even if the prosecutor's comments pressed permissible limits, it is more probable than not that they did not affect the verdict. *Id.* at 1343.

## VI.

As noted, the present indictment charged a conspiracy and substantive narcotics offenses growing out of the efforts of Linn and Hoelker to sell two kilos of cocaine in March 1982. When the original indictment was returned in June 1982 (superseded by an indictment filed in February 1983), a separate indictment was also returned against Linn alone charging a conspiracy between Linn and unnamed persons to possess and distribute cocaine during an overlapping period of time (March 1980 through June 1982), and with substantive offenses involving different distributions of cocaine to different persons on different dates than those alleged in the concurrently filed indictment against both Hoelker and Linn.

The charges against Linn alone in the separate indictment against him were tried first. Linn was convicted on both the conspiracy and substantive counts of that indictment. He then moved to dismiss the indictment in the present case on the ground that a trial would subject him to double jeopardy because the conspiracy and substantive cocaine offenses in the present case were part of the conspiracy for which he had already been convicted. The district court dismissed the conspiracy count in this case, but declined to dismiss the substantive cocaine counts.

Linn argues that the district court's dismissal as to him of the conspiracy count in this case on double jeopardy grounds establishes there was only a single conspiracy involving the substantive cocaine offenses alleged in both indictments. Linn concedes that "as a general rule a defendant can first be tried on a conspiracy count and then, in a separate trial be prosecuted for the underlying substantive offense," but submits that when only a single ongoing conspiracy is involved, the government may not charge some of the overt acts as substantive offenses in one indictment and others in another because all are part of the same "ongoing scheme," share the same "factual core," and are part of the "same transaction," which makes them the "same offense" for double jeopardy purposes. Linn relies on *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 55 L.Ed.2d 187 (1977), and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), particularly as applied in *United States v. Allen*, 539 F.Supp. 296, 312–13 (C.D.Cal.1982).

Logically, Linn's argument would bar trial of the conspiracy charge separately from the underlying substantive offenses, contrary to the rule Linn concedes to be the law. *See United States v. Kalish*, 734 F.2d 194, 198–99 (5th Cir.1984); *United States v. Brooklier*, 637 F.2d 620 (9th Cir. 1980).

The Supreme Court has not read into the double jeopardy clause as sweeping a preclusion of successive trials as Linn suggests. The Court has consistently interpreted the clause to bar successive prosecutions only in cases where proof of one offense is necessarily, or in fact, proof of the other. *Brown* held that under the *Blockburger* test[1] the double jeopardy clause barred a subsequent prosecution for auto theft after conviction for joyriding because, as defined by Ohio law, proof of auto theft necessarily included proof of joyriding. 432 U.S. at 166–69, 97 S.Ct. at 2225–27. *Vitale* held that under *Blockbur-*

---

**1.** "[W]hether each [charged offense] requires proof of a fact which the other does not," *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), is "the principal test for determining whether two offenses are the same for the purposes of barring successive prosecutions." *Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265.

*ger* the double jeopardy clause did not necessarily bar the subsequent prosecution for manslaughter by automobile after conviction for failure to reduce speed to avoid an accident because "manslaughter by automobile does not always entail proof of a failure to slow." 447 U.S. at 419, 100 S.Ct. at 2266. However, "if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy...." *Id.* at 421, 100 S.Ct. at 2267.

The central difference between this case and *Brown* and *Vitale* is that none of the acts of possession and distribution of cocaine alleged in the present indictment was alleged in the indictment on which Linn had been convicted. Proof of the substantive cocaine charges in the present indictment would not necessarily or in fact constitute proof of the first indictment's conspiracy or substantive counts.

Without suggesting whether we agree or disagree with the result in *United States v. Allen,* that case is clearly distinguishable. A scheme to defraud was an essential element of mail fraud, the substantive offense involved in *Allen* ("Whoever, having devised or intending to devise any scheme ... to defraud ...," 18 U.S.C. § 1341). When two or more persons are charged with mail fraud, the proof required is identical to that needed to prove a conspiracy (an agreement) to defraud. Furthermore, when a defendant is charged with several substantive counts of mail fraud, as in *Allen,* proof of each charge, though requiring proof of a different mailing, may require reproof of the same scheme. 539 F.Supp. at 310–11. Here, proof of the various substantive offenses of distributing cocaine and possessing cocaine for distribution did not require reproof of the conspiracy as an element of each offense.

We have examined appellants' other specifications of error and find them without merit.

AFFIRMED.