**CENTER ART GALLERIES—HAWAII, INC.; William D. Mett, Petitioners–Appellees,**

v.

**UNITED STATES of America, Respondent–Appellant.**

No. 88–2474.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1988.

Decided May 19, 1989.

Leslie E. Osborne, Asst. U.S. Atty., Honolulu, Hawaii, for respondent-appellant.

Brook Hart, Hart & Wolff, Honolulu, Hawaii, and John R. Wing, Weil, Gotshal & Manges, New York City, for petitioners-appellees.

Before BOOCHEVER, REINHARDT and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The government appeals the district court's order requiring the return of certain property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The government makes three contentions: first, that the district court erred by holding that the search warrants which commanded seizure of the property were overbroad; second, that even if the warrants were overbroad, the district court should have denied the Rule 41(e) motion based on the good faith exception to the exclusionary rule; and third, that the district court should have applied the inevitable discovery doctrine and permitted the government to keep the property even if the seizure was il-

legal.[1] We have jurisdiction under 18 U.S.C. § 3731. We affirm.

## I

### FACTS

As part of an investigation of suspected mail and wire fraud involving the sale of forged Salvador Dali artwork, federal agents executed search warrants at six locations under the control of Center Art Galleries–Hawaii. The searches lasted from twelve to fourteen hours. Federal agents seized a total of five truckloads of documents, artwork and other property.

Following the seizures, William Mett and Center Art Galleries (collectively "CAG") filed a motion in district court seeking the return of the seized property pursuant to Rule 41(e). *See* Fed.R.Crim.P. 41(e). The district court held that the warrants were unconstitutionally overbroad and ordered the return of all the seized property except artwork attributable to Salvador Dali. *See In re Motion for Return of Property Pursuant to Rule 41*, 681 F.Supp. 677, 687–88 (D.Haw.1988) [hereinafter *In re Motion*]. It is from this order that the government appeals.

## II

### OVERBREADTH

■ We, review a warrant's alleged overbreadth de novo. *United States v. McLaughlin*, 851 F.2d 283, 285 (9th Cir. 1988). "Only a warrant 'particularly describing the place to be searched and the persons or things to be seized' is valid. U.S. Const. amend. IV." *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982). "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986); *McLaughlin*, 851 F.2d at 285; *Cardwell*, 680 F.2d at 78 (courts

must "consider the totality of circumstances in determining the validity of a warrant"). As we explained in *Spilotro:*

> In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Spilotro*, 800 F.2d at 963 (citations omitted); *see also McLaughlin*, 851 F.2d at 285.

Each of the six warrants was identical except for the place to be searched. The relevant part of the warrants commanded the executing officer to seize:

> documents, books, ledgers, records and objects which are evidence of violations of federal criminal law including but not limited to:

> records of completed sales, customer correspondence including complaint files and refund-related documents, personnel files including payroll records, lists of current and former employees, employee compensation records for all employees, including but not limited to salesmen, art consultants, gallery directors and managers, records of payments to shareholders, financial records customer account statement sheets, bank records, including but not limited to cancelled checks, monthly account statements and deposit slips, cash receipt and disbursement records, telephone toll records, mail and telegram records including customer mailing lists, sales literature, sales training materials, including written sales pitches and program descriptions, tape recordings relating to sales business, customer contracts and records, business contracts including

---

1. The government also raises on appeal the issue whether the seized property was in plain view of the executing officers. We do not consider this issue because it was not presented to the district court. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985) (issues raised for the first time on appeal are generally not considered); *cf. United States v. Parr,* 843 F.2d 1228, 1232 (9th Cir.1988) (refusing to consider plain view argument not presented to district court).

invoices relating to sources of art work, business agreements, certificates of authenticity, lists of curators, curator contracts, calendars, internal memoranda and handwritten notes, diaries, key punch computer cards, computer floppy disks and diskettes, computer printout sheets with printouts of Information Systems Design programs, computer memory banks, computer tapes or other data storage devices, prints attributed to Salvador Dali; numbered, unnumbered, signed, unsigned, other works of art attributed to Salvador Dali, lead cards, lead sheets, lead source material, sales records and customer/client information, lithographic and etching plates, blank sheets of paper used for art reproduction; signed and unsigned (Rives, Japon and Arches paper), insurance documents relating to refund insurance coverage and refund claims.

We agree with the district court that the warrants are overbroad. The warrants' provision for the almost unrestricted seizure of items which are "evidence of violations of federal criminal law" without describing the specific crimes suspected is constitutionally inadequate. *Spilotro*, 800 F.2d at 964; *Cardwell*, 680 F.2d at 78 ("'limiting' the search to only records that are evidence of the violation of a certain statute is generally not enough"); *cf. McLaughlin*, 851 F.2d at 286 (warrant described "the specific crimes charged").

The government also failed to limit the warrants to items pertaining to the sale of Dali artwork despite the total absence of any evidence of criminal activity unrelated to Dali. As the district court noted, "[a]ll of the 22 instances of misrepresentations [alleged in the government's affidavit] concerned Salvador Dali artwork.... CAG is not primarily involved in Dali art. Approximately 80% of its business concerns non-Dali art." *In re Motion*, 681 F.Supp. at 681. "There is simply no evidence contained in the affidavit that suggests that CAG was involved in non-Dali related fraud." *Id.* at 682. Moreover, the government had the means to identify accounts which may have involved Dali artwork. The lead government investigator "was

aware that a special card was created for the file of all clients who were interested in Dali artwork." *Id.* at 679; *cf. VonderAhe v. Howland*, 508 F.2d 364, 366, 370 (9th Cir.1974).

The government contends that: (1) the specificity of the affidavit supporting the warrants cured any overbreadth in the warrants and (2) the warrants' broad scope was justified because CAG was permeated with fraud.

■ An affidavit can cure the overbreadth of a warrant if the affidavit is "attached to and incorporated by reference in" the warrant. *Spilotro*, 800 F.2d at 967; *United States v. Leary*, 846 F.2d 592, 603 (10th Cir.1988) ("the affidavit and search warrant must be physically connected so that they constitute one document ... and ... the search warrant must *expressly* refer to the affidavit and incorporate it by reference using suitable words of reference") (emphasis added); *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982); *see also United States v. Luk*, 859 F.2d 667, 676 & n. 8 (9th Cir.1988). The former requirement assures that "the person being searched has notice of the specific items the officer is entitled to seize." *In re Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981). The latter requirement helps assure that the affidavit actually limits "the discretion of the officers executing the warrant." *Id.* In the case before us, the affidavit was not expressly incorporated into the warrant. Moreover, although the government alleges that some of its officers had copies of the affidavit, the government does not claim that the affidavit was physically attached to the warrants or was given to CAG as part of the search.

■ The breadth of the warrants is not justified by the "permeated-with-fraud" circumstance which was present in *United States v. Offices Known as 50 State Distributing Company*, 708 F.2d 1371 (9th Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). There we approved the use of a rather broad warrant where:

[i]t was not possible through more particular description to segregate those business records that would be evidence of fraud from those that would not, for the reason that there was probable cause to believe that fraud permeated the entire business operation....

*Id.* at 1374. Other circuits have approved such broadly defined warrants when this special circumstance exists. *See, e.g., United States v. Brien,* 617 F.2d 299, 308, 309 n. 11 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980) (affidavit showed that "entire operation was a scheme to defraud investors;" the "two hundred fifty complaints that surfaced could fairly be inferred to be only the tip of the iceberg"); *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir.1980) (affidavit demonstrated "probable cause to believe that NCTC's business was permeated with fraud").

In clarifying the nature of this exception, *50 State* distinguished cases such as *Cardwell*—where a warrant allowing widespread seizure of business records was held to have violated the particularity requirement—because the investigations in such cases, and the affidavits supporting the warrants, had focused on a small segment of the business operation and therefore did not concern an operation that was permeated with fraud. *50 State,* 708 F.2d at 1375.

Here, the affidavit supporting the warrant contained twenty-two instances of alleged misrepresentation, all involving the work of Dali. According to the district court's findings, only approximately twenty percent of CAG's business was Dali related. The affidavit supporting the CAG warrants did not aver that evidence of Dali fraud was inseparable from other CAG documents or that CAG was permeated with fraud. *See United States v. Washington,* 797 F.2d 1461, 1473 (9th Cir.1986) (as amended) (to qualify under *50 State,* the government must make the required showing *in obtaining* the search warrant). Thus, the broad scope of the warrants was not justified under the *50 State* "business-permeated-with-fraud" doctrine. *Cf. 50 State,* 708 F.2d at 1374–75; *Cardwell,* 680 F.2d at 78.

## III

### THE GOOD FAITH EXCEPTION

At the Rule 41(e) hearing, the government contended that even if the warrants were overbroad, the evidence seized was admissible under the good faith exception to the exclusionary rule. The district court rejected this argument holding that: (1) the good faith exception to the exclusionary rule does not apply to Rule 41(e) motions and (2) even if the good faith exception is "applicable to Rule 41(e), the officers [executing the warrants] failed to meet its requirements." *In re Motion,* 681 F.Supp. at 686. We discuss each of these alternative holdings in turn.

### A.

■ We review the district court's interpretation of Rule 41(e) de novo. *United States v. Freitas,* 800 F.2d 1451, 1454 (9th Cir.1986).

Rule 41(e) provides in part:

*Motion for Return of Property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized.... If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fed.R.Crim.P. 41(e).

In *United States v. Roberts,* 852 F.2d 671 (2d Cir.) [hereinafter *Roberts II* ], *cert. denied,* — U.S. —, 109 S.Ct. 556, 102 L.Ed.2d 583 (1988), the Second Circuit held that the judicially created exceptions to the exclusionary rule apply to Rule 41(e) motions. *Roberts II,* 852 F.2d at 675. The court explained that the rule was merely

procedural and "was not intended to create new substantive grounds for suppressing evidence, but simply to provide a pre-indictment procedure for the return of property and the suppression of evidence in accordance with the substantive rights created by the Constitution or recognized in decisional law." 852 F.2d at 673; *see also United States v. Calandra*, 414 U.S. 338, 348 n. 6, 94 S.Ct. 613, 620 n. 6, 38 L.Ed.2d 561 (1974) ("Rule 41(e) ... does not constitute a statutory expansion of the exclusionary rule"); *United States v. 1328 North Main Street*, 634 F.Supp. 1069, 1072 (S.D.Ohio 1986) ("a ruling on the merits of a Rule 41(e) motion seeking suppression as well as return of property must embrace in its analysis the various dimensions of the exclusionary rule").

The Second Circuit decided *Roberts II* after the district court rendered its opinion in this case. The district court in this case relied heavily on the holding of the district court in the *Roberts* case, *Roberts v. United States*, 656 F.Supp. 929, 934 (S.D.N.Y. 1987). That decision was reversed by the Second Circuit in *Roberts II*.

CAG argues that *Roberts II* was wrongly decided. According to CAG, Rule 41(e)'s plain language requires, without exception, suppression of all illegally seized evidence. We disagree. Both the rule's language and legislative history suggest that the rule is purely procedural. *See* Fed.R.Crim. P. 41(e) advisory committee note to the 1972 amendments (noting that "substantive grounds for objecting to illegally obtained evidence ... are not ordinarily codified in the rules"); *see also Roberts II*, 852 F.2d at 673.

CAG also contends that the Second Circuit in *Roberts II* misinterpreted *United States v. Calandra*. CAG argues that *Calandra* stands for the proposition that Rule 41(e) mirrors "the exclusionary rule as it existed at the time of [the *Calandra*] decision—well before the good faith exception was created." Appellees' Supplemental Brief at 3. We disagree. CAG's interpretation of *Calandra* is too narrow. *Calandra*'s conclusion that Rule 41(e) is no broader than the exclusionary rule is perfectly consistent with the Second Circuit's conclusion in *Roberts II* that Rule 41(e) was intended merely to provide an additional procedure to enforce existing substantive rights. *Roberts II*, 852 F.2d at 674.

We conclude that the district court erred by holding that the good faith exception to the exclusionary rule does not apply to Rule 41(e) motions. We now consider the district court's alternative holding that even if the good faith exception applies, the government is not entitled to the exception in this case.

### B.

1. *District Court's Holding re Good Faith*

■ To invoke the good faith exception to the exclusionary rule, the government must prove that "its agents' reliance upon the warrant was objectively reasonable." *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir.1986). *See generally United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "Under *Leon*, the good faith exception to the exclusionary rule is inapplicable when the warrant is 'so facially overbroad as to preclude reasonable reliance by the executing officers' or when the officers do not act in good faith." *United States v. Luk*, 859 F.2d 667, 677 (9th Cir.1988) (citations omitted). "The question of whether the agents' reliance on the warrant was objectively reasonable is a mixed question of fact and law to be given de novo review." *United States v. Freitas*, 800 F.2d 1451, 1454 (9th Cir.1986); *United States v. Washington*, 797 F.2d 1461, 1473 n. 15 (9th Cir.1986) (as amended). The district court held that the CAG warrants were "so overbroad as to be facially invalid, thereby precluding good faith reliance on the validity of the warrant." *In re Motion*, 681 F.Supp. at 686. We agree.

The government argues that *Michaelian* supports its contention that the officers' reliance on the warrants was objectively reasonable. However, *Michaelian* is distinguishable because the warrants in that case did not "approximate the degree of facial deficiency which would preclude ob-

jective reasonable reliance by federal agents." *Michaelian,* 803 F.2d at 1047. Indeed, we limited our holding to *facially valid* warrants. *Id.* at 1046. The *Michaelian* warrants limited the property to be seized to certain categories of documents within specific time periods. *Id.* The warrants also restricted the search to evidence of specific crimes described in the text of the warrants. *Id.* at 1046 n. 1. In the present case, the warrants contained no meaningful restriction on which documents could be seized. The warrants were so overbroad that absent some exceptional circumstance, no agent could reasonably rely on them. *See United States v. Stubbs,* 873 F.2d 210, 212–213, (9th Cir.1989); *United States v. Dozier,* 844 F.2d 701, 708 (9th Cir.1988); *United States v. Crozier,* 777 F.2d 1376, 1381 (9th Cir.1985).

The government points to two circumstances which it argues permit reliance on the warrants notwithstanding their broad reach. First, the government contends that reliance on the warrants was reasonable because, like *50 State,* CAG was permeated with fraud. As we have previously noted, however, the government made no showing that CAG's business was in fact permeated with fraud. And the district court found that "the facts in this case, as related in [the supporting] affidavit, preclude reliance upon *50 State." In re Motion,* 681 F.Supp. at 686. We agree with the district court's analysis.

■ The government next argues that reliance was reasonable because Postal Inspector Richard Portmann, the inspector who applied for the CAG warrants, did all that reasonably could be expected of him in obtaining the warrants. *Cf. Massachusetts v. Sheppard,* 468 U.S. 981, 989, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984) (*Leon's* companion case) (police "took every step that could reasonably be expected of them"). According to the government, Portmann had: (1) modeled the CAG warrants after similar warrants used on the East Coast, (2) consulted with the agent responsible for the East Coast warrants, (3) submitted the CAG warrants to both a United States Attorney and an Assistant United States Attorney for approval and (4) received the approval of a magistrate who made some minor corrections to the inspector's supporting affidavit.

We are unaware of any Ninth Circuit or Supreme Court case which has applied *Sheppard* to a warrant approximating the degree of facial overbreadth which would preclude reasonable reliance. *Cf. Michaelian,* 803 F.2d at 1047; *United States v. Freitas,* 856 F.2d 1425, 1429 (9th Cir.1988) (specifically noting that warrant was sufficiently particular) [hereinafter *Freitas II* ]. However, even if a *Sheppard*-type good faith exception may be applied to such an overbroad warrant, the government is not entitled to the exception in this case. The government does not argue that Inspector Portmann warned the magistrate of the apparent overbreadth of the warrants or that Portmann received specific assurances from the magistrate that the CAG warrants were not overbroad. *Cf. Sheppard,* 468 U.S. at 985–86, 989, 104 S.Ct. at 3426–27, 3428 (judge informed officer that he would make the necessary changes to rectify problem); *Freitas II,* 856 F.2d at 1431 (magistrate assured agent that he had authority to issue warrant with the controversial provisions); *Michaelian,* 803 F.2d at 1044, 1047 (not discussing whether a magistrate or judge had made any assurances). When the officer seeking the warrant is aware of an overbreadth problem, as Inspector Portmann was in this case,[2] we can reasonably expect the officer to bring the problem to an impartial magistrate's or judge's attention and to seek specific assurances that the possible defects will not invalidate the warrant. *See United States v. Spilotro,* 800 F.2d 959, 968 (9th Cir.1986) ("In *Crozier* we held that an agent could not rely reasonably on an overly broad warrant limiting a search only to evidence of violation of two statutes, at least absent specific assurances from the magistrate that the overbreadth concern was without merit."); *cf. Luk,* 859 F.2d at

---

**2.** The district court found Portmann "was keenly aware that he was riding the outer limits of the Fourth Amendment." *In re Motion,* 681 F.Supp. at 686.

677 n. 9 (noting that there was no evidence that the affiant knew that the warrant was overbroad).

We reject the government's arguments that reliance on the warrants was reasonable under *Sheppard.*

## 2. *Hearing on Good Faith*

■ The government contends the district court erred by not holding an evidentiary hearing on the good faith issue. We review a decision not to hold an evidentiary hearing on a motion to suppress for abuse of discretion. *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir.1986); *see also United States v. Batiste,* 868 F.2d 1089, 1091–92 (9th Cir.1989). An evidentiary hearing is generally required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *Walczak,* 783 F.2d at 857.

We conclude that the district court acted within its discretion in not holding an evidentiary hearing. The government failed to make a sufficient showing of what issues of fact would be resolved by an evidentiary hearing, and what evidence, in addition to that presented by the affidavits, would be adduced by such a hearing. *See Walczak,* 783 F.2d at 857; *United States v. Marcello,* 731 F.2d 1354, 1358 (9th Cir. 1984); *United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *Cohen v. United States,* 378 F.2d 751, 760 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); *see also* 3 C. Wright, Federal Practice and Procedure § 675, at 781–82 (1982) ("Factual allegations that are general or conclusory or based upon suspicion and conjecture will not suffice."). Even on appeal, the government's briefs fail to identify any facts it would have brought forth in an evidentiary hearing which were not contained in the affidavits the government presented to the district court.[3]

3. We also note that the government failed to allege facts which, even if fully credited, would provide a reasonable basis for the executing officers' reliance on the patently overbroad war-

## IV

### INEVITABLE DISCOVERY

■ As an additional ground for its argument that it should be entitled to retain the seized items, the government contends that regardless of the validity of the seizure, it inevitably would have obtained the items when CAG responded to subpoenas which the government served after it executed the warrants. By this argument the government invokes the inevitable discovery doctrine of *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 2511, 81 L.Ed. 2d 377 (1984). Under this doctrine, evidence which has been illegally obtained will not be suppressed if "the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching." *Id.; see also United States v. Andrade,* 784 F.2d 1431, 1433 (9th Cir. 1986).

We reject the government's inevitable discovery argument. The argument is based on the premise that by service of the subpoenas the government inevitably would have received the items the subpoenas sought. This is not so. As the Second Circuit in *Roberts II* pointed out:

The government contends that it inevitably would have discovered the documents under a subpoena that it had issued several months before the search of the premises. The mere fact that the government serves a subpoena, however, does not mean that it will obtain the documents it requests. A subpoena can be invalid for a variety of reasons, as when it is unduly burdensome, when it violates the right against self-incrimination, or when it calls for privileged documents.... Thus, the government cannot show that its subpoena would have inevitably resulted in the discovery of the suppressed documents.

rants. *See United States v. King,* 528 F.2d 68, 69 (9th Cir.1975) (no hearing required "where allegations, even if proved, would not justify relief"); *Cohen,* 378 F.2d at 760.

*Roberts II,* 852 F.2d at 676 (citations omitted).

 Consistent with the Second Circuit's resolution of the question in *Roberts II,* we hold that while an inevitable discovery analysis is appropriate in the context of a Rule 41(e) proceeding, the doctrine will not be applied to validate an illegal seizure when inevitable discovery is predicated upon a subpoena served to compel production of the seized items. *Cf. In re Motion,* 681 F.Supp. at 687 (decrying the use of a subpoena served at the time of an illegal search as "an insurance policy" to protect against suppression motions).

### CONCLUSION

The warrants in this case were overbroad. While an affidavit can cure overbreadth, to do so the affidavit must be attached to and incorporated by reference into the warrant. Here, the affidavit was not attached, nor was it expressly incorporated into the warrant.

Judicially created exceptions to the exclusionary rule apply to Rule 41(e) motions. *Roberts II,* 852 F.2d at 675. The overbreadth of the warrants was not justified by the "permeated-with-fraud" exception of *United States v. Offices Known as 50 State Distributing Company,* 708 F.2d 1371 (9th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). The seizures were not validated by the good faith exceptions of *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), or *Massachusetts v. Sheppard,* 468 U.S. 981, 989, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737 (1984); and the inevitable discovery doctrine of *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 2510, 81 L.Ed.2d 377 (1984) was not brought into play by service of the subpoenas. The district court did not abuse its discretion in declining to hold an evidentiary hearing on the Rule 41(e) motion.

AFFIRMED.