**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony PELLICANO, Defendant–**
**Appellant.**

**No. 04–50043.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 2005.

Decided June 9, 2005.

As Amended on Denial of Rehearing and
Rehearing En Banc July 18, 2005.*

---

* Judges O'Scannlain and Clifton have voted to deny the petition for rehearing; Judge Reinhardt has voted to grant the petition for rehearing. Judges O'Scannlain and Clifton have voted to deny the petition for rehearing en banc; Judge Reinhardt has voted to grant the petition for rehearing en banc.

---

Daniel A. Saunders, Esq., USLA–Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Alan Jay Weil, Esq., Donald M. Re, Esq., Law Offices of Donald M. Re, Los Angeles, CA, Victor Sherman, Esq., Sherman & Sherman, Santa Monica, CA, for Defendant–Appellant.

Before REINHARDT, O'SCANNLAIN, and CLIFTON, Circuit Judges.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## MEMORANDUM**

Anthony Pellicano appeals his conviction following a conditional guilty plea to possession of unregistered firearms in violation of 26 U.S.C. § 5861(d) and possession of plastic explosives in violation of 18 U.S.C. § 842(n)(1). We affirm.

Pellicano's primary challenge is to the validity of the first warrant, issued November 19, 2002. It was during the search pursuant to the first warrant that the incriminating items were discovered. That caused the agents to obtain the second warrant, issued November 21, 2002, which authorized the search for and seizure of those items. Pellicano argues that probable cause did not exist for the first warrant because the alleged misconduct (for which the government asserted that it had probable cause) did not, contrary to the government's assertion, constitute a violation of the Hobbs Act. After the Supreme Court's subsequent decision in *Scheidler v. NOW, Inc.*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), the government effectively acceded to that position, because it dropped the investigation and dismissed a related indictment. Pellicano argues that even prior to *Scheidler*, the government lacked probable cause based on our decision in *United States v. Panaro*, 266 F.3d 939, 948 (9th Cir.2001), in which we held that the "obtaining" element of § 1951 required that the victim must not only be deprived of property, but that someone must receive the property as a result of the deprivation.

We need not determine here whether probable cause existed for the issuance of the warrant. Where the first warrant was issued by a proper authority and there is no evidence that the officer seeking the warrant acted in bad faith or

that the issuing magistrate abandoned his neutral judicial role,[1] the search fell within the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon*, 468 U.S. at 906, 104 S.Ct. 3405 (citation omitted). As with any remedial device its application should be restricted to those areas where its remedial objectives can be most efficaciously achieved, *id.* at 908, 104 S.Ct. 3405, and "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. 3405.

Warrants were obtained from a magistrate judge for both the first and second searches. Even if Pellicano is correct that probable cause was lacking for the first warrant, such that it should not have been signed by the magistrate judge, it was signed, and because the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the agents were allowed to rely upon the warrant to conduct the search. *See Leon*, 468 U.S. at 921, 923, 104 S.Ct. 3405. ("It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . .").

Specifically, the officer's actions in applying for the warrant were not unreasonable in light of the legal rules that were "clearly established" at the time the first warrant was obtained and the search conducted. *See United States v. Brown*, 951 F.2d 999, 1006 (9th Cir.1991). In *United States v. Panaro*, we held that the "obtaining" element of § 1951 required not only that the victim must be deprived of property, but that someone must receive the property as a result of the deprivation. *Panaro*, 266 F.3d at 948. *Panaro*, however, was a case concerning the extortion of tangible property rights and did not address the line of cases in which we appeared to suggest that it was possible to extort intangible property rights under § 1951 by appropriating control of the right. *See United States v. Hoelker*, 765 F.2d 1422, 1425 (9th Cir.1985) (the intangible right at issue was the victim's *"right to make personal and business decisions* about the purchase of life insurance on his own life free of treats and coercion"); *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir.1980) (the intangible right at issue was the victim's *"right to solicit business* free from threatened destruction and physical harm");[2] *see also Scheidler*, 537

---

1. The district court found that Special Agent Ornellas was not dishonest or reckless in preparing the affidavit and that the magistrate judge did not abandon his detached and neutral role when he issued the warrant. Pellicano does not challenge either of these findings and we have no reason to believe they are clearly erroneous.

2. Notwithstanding the dissent's assertion to the contrary, both *Hoelker* and *Zemek* could fairly be read to support the proposition that the destruction of an intangible right was the legal equivalent of appropriating control of the right, thereby satisfying the requisite obtaining element under § 1951. As the dissent correctly observes, Zemek was charged with extorting the goodwill and customer revenues of a competing tavern, but the court's holding was much broader. The court concluded that the "right to solicit business free from threatened destruction and physical harm falls within the scope of protected property rights under the Hobbs Act." *Zemek*, 634 F.2d at

U.S. at 414 n. 1, 123 S.Ct. 1057 (Stevens, J., dissenting) (expressing the view that the decision of the majority in *Scheidler* was inconsistent with prior caselaw, including *Zemek*, in which threats of violence intended to induce surrender of an intangible right were "embraced by the term 'obtaining' ").[3] The decision of the three-judge panel in *Panaro* could not itself have overruled our prior precedents, since only an *en banc* panel of our court is authorized to do that. *See United States v. Gay*, 967 F.2d 322, 327 (9th Cir.1992). Accordingly, thoughtful and competent lawyers and judges could have disagreed on whether, after *Panaro*, the misconduct that was the subject of this investigation constituted a violation of the Hobbs Act. Therefore, we conclude the officer manifested objective good faith in relying on the first warrant. *See United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir.1994).[4]

 Pellicano also challenges the scope of the first warrant. That warrant detailed three categories of items to be seized, all of which were believed to constitute evidence of precisely identified criminal activity. The warrant was "specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986) (explaining that the "specificity required in a warrant varies depending on the circumstances of the case and the type of items involved"). While the warrant permitted agents to review each file to determine whether it fell within the items to be seized, it authorized the seizure of only those files related to the three categories described in the warrant. *Cf. Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (observing that "[i]n searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in

---

1174. That was exactly the situation faced here. Pellicano was charged with physically intimidating a *Los Angeles Times* reporter so that the *Times* would not run a story unfavorable to his client, thereby usurping the paper's right to make business decisions free from threatened destruction and physical harm. As the dissent concedes *Zemek* and *Hoelker* were good law at the time the warrant was issued, it does not follow that the warrant was so lacking in indicia of probable cause as to render the official belief in its existence entirely unreasonable.

3. The officers could not be required to anticipate the Court's decision in *Scheidler*, announced three months after the warrant was issued. Furthermore, the fact that Justice Stevens believed *Zemek* was still good law prior to *Scheidler* is powerful support for the proposition that a reasonable officer, lawyer, or judge could have reached the same conclusion, despite *Panaro*, and despite the assertion to the contrary made here by the dissent. The officers here can hardly be faulted for holding the same view that Justice Stevens held.

4. Additionally, we observe that the holding of *Center Art Galleries–Hawaii v. United States*, 875 F.2d 747 (9th Cir.1989) is not so broad as the dissent asserts. In *Center Art Galleries*, the court specifically noted that *Mass. v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), did not preclude it from creating an affirmative duty requiring an officer to notify a magistrate when a warrant was clearly facially overbroad. 875 F.2d at 753. The issue here, however, is not whether the warrant was clearly facially overbroad, but whether it was "so lacking in indicia of probable cause as to render official belief in it entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3430. As the Court explained in *Sheppard*, even where an officer was on notice that the warrant might be legally flawed, "[w]hatever an officer may be required to do when he executes a warrant . . . we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." 468 U.S. at 989–90, 104 S.Ct. 3424.

fact, among those papers authorized to be seized"). Accordingly, consistent with our previous cases in which we approved the seizure and off-site examination of computer equipment to identify evidence within the scope of a warrant, we conclude the scope of the first warrant was supported by probable cause and that the warrant was sufficiently specific under the circumstances to protect Pellicano's right to be free from unbounded searches. *See, e.g., United States v. Hay,* 231 F.3d 630, 636–38 (9th Cir.2000); *United States v. Lacy,* 119 F.3d 742, 746 (9th Cir.1997).

 Although Pellicano initially pled guilty to count one of the indictment, prior to sentencing he moved to withdraw his conditional plea of guilty and to dismiss count one. *United States v. Stewart,* 348 F.3d 1132, 1136–37 (9th Cir.2003), decided after Pellicano entered his guilty plea, but before he was sentenced, held that 18 U.S.C. § 922(*o*) exceeded Congress' commerce power as applied to possession of homemade machine guns that are fabricated within a single state. Pellicano argues that, in light of *Stewart,* the district court erred by refusing to permit the withdrawal of the guilty plea. Pellicano was not charged with violation of the statute at issue in *Stewart,* however, but with violation of 26 U.S.C. § 5861(d), which is part of the Internal Revenue Code. In contrast to 18 U.S.C. § 922(*o*), which criminalized the possession of the machine guns, 26 U.S.C. § 5861(d) criminalized Pellicano's failure to register the firearms in his possession. Section 5861(d) of the Internal Revenue Code is a valid enactment of Congress' taxing power. *Sonzinsky v. United States,* 300 U.S. 506, 513, 57 S.Ct. 554, 81 L.Ed. 772 (1937) (holding that the National Firearms Act was a valid exercise of Congress' taxing power); *Hunter v. United States,* 73 F.3d 260, 262 (9th Cir.1996) (holding that § 5861 continues to be within

Congress' power to tax). The district court did not err in denying Pellicano's motion to withdraw his guilty plea and dismiss count one of his conviction.

The sentence is remanded to the district court for proceedings consistent with *United States v. Ameline,* 409 F.3d 1073 (9th Cir.2005) (en banc).

**CONVICTION AFFIRMED; SENTENCE REMANDED.**

REINHARDT, Circuit Judge, dissenting.

Pellicano contends that probable cause for the search warrant at issue in this case was completely lacking as a matter of law and that the F.B.I. agents who sought and executed it did not do so in good faith. He is correct on both accounts.

In *United States v. Panaro,* 266 F.3d 939 (9th Cir.2001) (as amended), "we held that the 'obtaining' element of [18 U.S.C.] § 1951 required that the victim must not only be deprived of property, but that someone must receive the property as a result of the deprivation." Maj. op. at 45 (citing *Panaro,* 266 F.3d at 948). Subsequent to that decision and the search at issue, which occurred in 2002, the Supreme Court confirmed in *Scheidler v. Nat'l Org. for Women,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), that extortion under the Hobbs Act requires both the deprivation of a property right by the defendant *and* its receipt by him. *See id.* at 403, 123 S.Ct. 1057. Our opinion in *Panaro* could not have been clearer on this point: "[S]omeone—either the extortioner or a third person—must *receive* the property of which the victim is deprived." 266 F.3d at 948 (emphasis added).

Here, the affidavit supporting the warrant states that Pellicano hired someone to set the victim-reporter's car on fire and that he may have threatened another re-

porter to dissuade the two from publishing articles regarding a client. The affidavit does not, however, state that Pellicano actually appropriated or sought to appropriate any property of the victim, tangible or intangible. The entirety of the allegation is simply that Pellicano sought to dissuade the victim-reporter from exercising her rights or interests, not that he sought to acquire those rights or interests for himself or to have them transferred to a third person. Even today, the government does not allege that Pellicano or any other person sought to receive or received any property of any kind in connection with the criminal conduct alleged in the affidavit. Given that extortion under the Hobbs Act requires receipt by the defendant or a third person of the property of which the victim is deprived (or at least an attempt to obtain that property) and given that the F.B.I. agent who filed the affidavit and sought the warrant failed to allege that Pellicano or any other person received or sought to receive any property of the victim, probable cause for the warrant at issue was completely lacking.

The majority holds that, even if there was no probable cause supporting the issuance of the warrant, the search falls within the good faith exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The "good faith exception" does not apply, however, unless the searching officers' reliance on the warrant was "objectively reasonable." *Id.* Officers are assumed to have a "reasonable knowledge of what the law prohibits." *Id.* at 920 n. 20, 104 S.Ct. 3405. Moreover, here, the F.B.I. agent who obtained the warrant was among the searching officers.

Reasonable people could not dispute that the F.B.I. failed to adhere to the law as it existed at the time the warrant in this case was obtained. Our case law clearly established that extortion under the Hobbs Act requires that the victim be deprived of the property *and* that the property be acquired by the defendant or another. *See, e.g., Panaro,* 266 F.3d at 948. We have *never* held that the mere deprivation or loss of a property right, be the right tangible or intangible, is sufficient to constitute extortion under § 1951, where neither the defendant nor a third person acquired or sought to acquire control of the right or interest. *Cf. Panaro,* 266 F.3d at 939; *United States v. Hoelker,* 765 F.2d 1422 (9th Cir.1985); *United States v. Zemek,* 634 F.2d 1159 (9th Cir.1980) (as amended).

The majority attempts to distinguish extortion cases dealing with intangible property rights from extortion cases dealing with tangible property rights, and argues that *Hoelker* and *Zemek* suggest that the *Panaro* rule would not apply where the property at issue is intangible. While *Hoelker* and *Zemek* establish that intangible property rights can be "obtained" within the meaning of § 1951, neither case suggests in any way that merely causing someone to surrender an intangible property right or merely causing the destruction of that right is sufficient, without the concomitant *obtaining* of some property interest by the extortionist or another, to meet the "obtaining" requirement under the Hobbs Act. Indeed, in both those cases the defendants sought to obtain *for themselves* an intangible property right as a result of their efforts to deprive the victims of their interests. The defendant in *Hoelker* threatened the victim with physical violence in order to cause him to name Hoelker as the beneficiary of his life insurance policy. *See Hoelker,* 765 F.2d at 1424. Likewise, in *Zemek,* the defendants extorted the victim in order to obtain for themselves the goodwill and customer revenues of a competing tavern. *See Zemek,* 634 F.2d at 1173. The defendants in both

cases not only sought to compel the victims to relinquish their property, but they sought to acquire the benefits of that property for themselves. In neither case is there any hint of a different rule for tangible and intangible property rights.

All that *Hoelker* and *Zemek* establish is that both tangible and intangible property rights can be extorted under the Hobbs Act. They *do not* eliminate from intangible rights cases the element of the offense that requires that the defendant or a third party receive the extorted property.[1] Nor could any reasonable law enforcement officer have believed in good faith that they did. Far from distinguishing the application of the Hobbs Act to intangible property rights from its application to tangible property rights, the cases cited by the majority hold that both tangible *and* intangible property rights are to be treated in the same manner. In short, the Hobbs Act's "obtaining" element unequivocally applies to both alike.

In the present case, there is no suggestion in the affidavit supporting the search warrant that Pellicano or anyone else sought to receive or received the property right—whether tangible or intangible—that belonged to the victim. Nor could any such allegation have been made, given that the threatened action was intended simply to discourage the victim from publishing an article and not to cause the transfer of any right or interest in property to Pellicano or a third person. Whether

the agents relied upon *Hoelker* and *Zemek,* or upon *Panaro,* they could not reasonably have believed that probable cause existed, because there were *no* facts in the search warrant's affidavit suggesting that Pellicano or any third person received or sought to receive any extorted property of the victim.

*Hoelker, Zemek,* and *Panaro* unquestionably governed at the time the warrant in this case was issued and executed. Thoughtful, competent, and reasonable judges could not have disagreed that they constituted the clearly established law of this circuit—law of which the officers were deemed to have been aware and which clearly established that the obtaining or receiving of the property of the victim was an element of the offense of extortion. In light of the applicable cases, reliance on the magistrate-judge's issuance of the search warrant was objectively unreasonable.

Additionally, any argument that the F.B.I. agents acted in good faith is foreclosed by *Center Art Galleries–Hawaii v. United States,* 875 F.2d 747 (9th Cir.1989). There, we held that an officer seeking a warrant who is aware of a potential legal problem must alert the magistrate-judge to the issue "and [ ] seek specific assurances that the possible defects will not invalidate the warrant," if he is to rely subsequently on the good faith exception. *Id.* at 753–54. Here, there can be little

---

1. The majority states that "both *Hoelker* and *Zemek* could fairly be read to support the proposition that the destruction of an intangible right was the legal equivalent of appropriating control of the right." Maj. Op. at 46–47 n. 2. There is nothing in either opinion to support this assertion. *Hoelker* and *Zemek* hold only that intangible property rights can be extorted under the Hobbs Act. In other words, they hold that intangible property rights constitute "property" within

the meaning of the Hobbs Act. Neither case suggests that the "obtaining" element of § 1951 is eliminated or merges into the "property" element when the property involved is intangible. In both *Hoelker* and *Zemek,* the defendants sought to compel the victims to relinquish their property *and* to acquire the benefits of that property for themselves. Thus, in both cases the defendants met the obtaining requirement. There is no suggestion in the affidavit that Pellicano sought to obtain the property at issue or

doubt that the agent who obtained the warrant was "keenly aware" of the legal problem created by the established law of this circuit and failed to alert the magistrate-judge to it. The agent "presented his affidavit to the [U.S. Attorney's Office] for multiple levels of review." More specifically, the affidavit was presented to an Assistant U.S. Attorney, a Section Deputy Chief, a Section Chief, and the Chief of the Criminal Division. It was also presented to Senior Litigation Counsel and a Deputy Chief with the Organized Crime and Racketeering Section of the Department of Justice. The affidavit supporting the warrant was approved at each level. It is inconceivable that the "obtaining" issue did not arise during the course of these reviews, especially given that the Justice Department was litigating that very issue before the Supreme Court in November, 2002, at the time when the F.B.I. presented the Department with the warrant application for review. *See Scheidler,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991, *cert. granted,* 535 U.S. 1016, 122 S.Ct. 1604, 152 L.Ed.2d 619 (2002). Moreover, the government has not asserted in its brief or at oral argument that the F.B.I. agent who sought the warrant and the reviewing attorneys who approved it were unaware of our decisions in *Panaro, Hoelker,* and *Zemek.* As in *Center Art,* there is no suggestion in the record, and the government does not argue, that the agent alerted the magistrate-judge to the legal problem which confronted it or sought his "specific assurances" that the absence of the obtaining element would not "invalidate the warrant." *See United States v. Spilotro,* 800 F.2d 959, 968 (9th Cir.1986). Under these circumstances the government may not rely on the good faith exception. *See Center Art,* 875 F.2d at 753–54.

Despite the majority's assertion to the contrary, *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), does not limit our holding in *Center Art* "to preclude it from creating an affirmative duty requiring an officer to notify a magistrate" when a warrant is defective. Maj. Op. at 46–47 n. 4. Quite the opposite! The majority's recitation of *Sheppard* omits the critical portion. It fails to relate that, unlike here and unlike in *Center Art,* the police officer who obtained the search warrant in *Sheppard* notified the magistrate judge that the warrant application was incorrect in certain respects, and the magistrate judge then assured him that "the necessary changes will be made," and approved the warrant. *See* 468 U.S. at 989, 104 S.Ct. 3424. Thus, the Court's refusal to require an officer "to disbelieve a judge who has just advised him ... that the warrant he possesses authorizes him to conduct the search" was predicated upon the officer's notification to the magistrate judge of the defects in the application that were known to the officer. *Id.* at 989–90, 104 S.Ct. 3424. This was likewise precisely the holding of *Center Art:* An officer seeking a warrant who is aware of a potential legal problem must alert the magistrate judge to the issue "and [ ] seek specific assurances that the possible defects will not invalidate the warrant." 875 F.2d at 753–54. It is also precisely what the officer who obtained the warrant *failed* to do here, and it is precisely why the good-faith exception does *not* apply in this case.[2]

to acquire its benefits either for himself or a third party.

2. The majority also states that "the issue here ... is not whether the warrant was clearly facially overbroad, but whether it was 'so

lacking in indicia of probable cause as to render official belief in it entirely unreasonable.' " Maj. op. at 46–47 n. 4 (citation omitted). The majority offers no explanation for including this statement in the disposition, and, there appears, in fact, to be none.

Because *Panaro, Hoelker,* and *Zemek* clearly established that the government's Hobbs Act allegations failed to state an offense under § 1951 and the F.B.I. failed to inform the magistrate-judge of the potential defects in the affidavit or advise him that our clearly established case law required that the defendant or a third party obtain a right to or interest in the extorted property, no offense was adequately alleged, probable cause for the initial search warrant did not exist, and the good faith exception does not apply. Accordingly, I would hold that the initial search warrant was invalid. All the evidence uncovered during the search should be suppressed, and Pellicano's conviction should be reversed. I dissent.