**FORRO PRECISION, INC.,
Plaintiff-Appellant,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant-Appellee.**

**CA No. 83–2243.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1984.

Decided Oct. 26, 1984.

---

Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiff-appellant.

Henry C. Thumann, O'Melveny & Myers, Los Angeles, Cal., for defendant-appellee.

Before TANG, POOLE, and CANBY, Circuit Judges.

POOLE, Circuit Judge:

This case has been before this court once before. *Forro Precision, Inc. v. Intern. Business Machines,* 673 F.2d 1045 (9th Cir. 1982) (hereinafter *"Forro* I"). Following our order remanding this case for a new trial, the district court granted summary judgment for defendant, and plaintiff Forro appealed. We affirm.

I. *Facts.*

The events underlying this case were fully described in *Forro* I, and need not be recounted here at length.

Forro Precision, Inc. (Forro) brought this action against International Business Machines Corporation (IBM) as a result of IBM's role in a highly-publicized, 12–hour police search of Forro's business premises. The search by Santa Clara police officers in 1973 resulted from IBM's request for police assistance in the company's efforts to locate the source of confidential IBM engineering documents that might have found their way into the hands of IBM competitors. Forro's lawsuit alleged that IBM orchestrated the search of its premises in order to create a "thunderclap" of adverse publicity, and that it thereby tortiously interfered with Forro's contractual relations.

A jury found for Forro on its claim of intentional interference with contract, and awarded $2,739,010 in damages.

On appeal, we reversed, holding that IBM's communications with authorities were absolutely privileged under California Civil Code § 47(2).[1] *Forro* I, p. 1055. We remanded the case for a new trial, stating:

> Accordingly, we find that the trial court erred in failing to instruct the jury that IBM's communications with the authorities and its participation in the search were privileged under California law. The evidence relating to these activities was such a major part of the proof adduced by Forro in support of its claim of

---

1. California Civil Code § 47(2) states in relevant part: "A privileged publication or broadcast is one made * * * 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law * * *." California courts have held that the privilege applies to communications made to prompt law enforcement officials to initiate proceedings. *Brody v. Montalbano,* 87 Cal.App.3d 725, 87 Cal.Rptr. 725 (1978), *cert. denied,* 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979).

intentional interference that its admission at all and certainly its admission without proper instruction was prejudicial to IBM's cause.

*Forro* I, p. 1056. On remand, IBM moved for summary judgment. The district court concluded that apart from evidence of conduct held privileged by our opinion, "there is no case," and granted the summary judgment motion.

## II. *Discussion.*

Our standard of review on summary judgment focuses on the same issue which was before the district court: whether, viewing all factual issues in the light most favorable to the non-moving party, Forro, there existed no genuine issue of material fact upon which IBM could have been found liable for intentional interference with Forro's contractual relations. Since our prior opinion held that IBM's communications with police officials and its instigation and cooperation in the search of Forro's premises were absolutely privileged, the single issue here is whether IBM's non-privileged conduct could support a finding of liability. We agree with the district court that it could not.[2]

■ A. *Fraudulent silence.* Forro argues that the privilege of California Civil Code § 47(2) extends only to affirmative disclosures and not to selective failures to disclose information. We disagree. Forro alleged, and for purposes of summary judgment we may accept, that IBM deliberately withheld from the Santa Clara police information which, if revealed, might have dissuaded them from searching Forro's premises. Forro argues, in particular, that the police would not have authorized the search had they known that, more than a year earlier during discovery for another lawsuit, IBM had already obtained from Forro the allegedly secret IBM documents in Forro's possession and had voluntarily returned them to Forro without restrictions.

Forro's "fraudulent silence" doctrine, however, is incompatible with the § 47(2) privilege and with our prior opinion. In *Forro* I, we explicitly noted that IBM's alleged deception was accomplished by its failure to present certain information to police officials. 673 F.2d at 1055. Nevertheless, we made no exception from the privilege for such deception by inaction.

Nor could we logically make such an exception. We see no reason why the absolute privilege of § 47(2) should protect the speaker who baldly and maliciously lies to the authorities, yet exclude one who speaks a half-truth. Whatever the policy justifying § 47(2), it could not be advanced by such a fine distinction. Accepting Forro's argument would tend to undermine and destroy the § 47(2) privilege, contrary to California's manifest policy of resolving doubts in favor of extending that privilege. *Twyford v. Twyford,* 63 Cal.App.3d 916, 134 Cal.Rptr. 145 (1976).

■ B. *Non-Privileged conduct.* Forro failed to show any proximate causal connection between its injury and any non-privileged conduct by IBM.

Forro points to "Operation Artichoke," an IBM industrial espionage project. In

**2.** Forro's reliance on *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) is misplaced. In *Gruenberg,* the cause of action against the insurance company "transcended" the privileged acts because those acts were separate and independent of the essential wrongful conduct alleged: unjustified failure to pay amounts owed under the contract of insurance. Here, by contrast, all Forro's injury arose directly from the police search, for which we have held IBM protected by the Civil Code § 47(2) privilege. [In *Gruenberg,* an insurance company encouraged arson charges against its insured, then denied liability on its policy when the insured refused to give a statement concerning the fire while arson charges were still pending. Though statements made by company officials to fire department arson investigators were protected by the Civil Code § 47(2) privilege, the California Supreme Court reversed a judgment dismissing an action against the insurance company. The court stated that "even if * * * privileges apply to the separate acts of the insurer's alleged agents, the defendant insurers may not benefit from them because their alleged scheme to avoid liability under the policies, in breach of an implied duty of good faith and fair dealing, transcends the individual acts of their agents." 9 Cal.3d at 576, n. 5, 108 Cal.Rptr. 480, 510 P.2d 1032.]

"Operation Artichoke," IBM paid agents to attempt surreptitiously to purchase plans for IBM's own "Winchester" disk drive, in hopes of finding the ultimate source of the documents in IBM. But "Operation Artichoke" discovered no connection between Forro and the theft of the "Winchester" plans; regardless whether the project was otherwise objectionable, it caused no harm to Forro. The only possible connection between "Operation Artichoke" and Forro's injury is through the police search, which we have already held to be privileged.

IBM's return of documents to Forro following depositions in an earlier action had no effect on Forro except through the police search. This conduct does not form an independent ground for liability. Similarly, there was no showing that IBM's alleged agreements with Honeywell, 3M and Control Data Corporation for their cooperation in the "thunderclap" of publicity were connected with Forro's injury except through the police search. Neither forms an independent ground for liability.

Forro argues for the first time on appeal that, following the search, IBM inflamed publicity against Forro and that IBM officials visited a Forro customer, Nashua, to dissuade it from doing business with Forro. However, since this argument was never made to the district court, we need not consider it. *Inland Cities Express v. Diamond Nat. Corp.*, 524 F.2d 753, 755 (9th Cir.1975).

Moreover, even if it were properly before us, this argument would not support Forro's case. The most egregious IBM-generated publicity cited by Forro was an article in which an IBM spokesman stated that IBM had "cooperated with the police" and that the company was "saddened" by the possibility that IBM personnel might be linked with theft of trade secrets. The statement was not directed specifically at Forro, and it is inconceivable that it caused Forro any injury. As for the alleged visit to Forro customer Nashua, it is undisputed that Nashua had decided to reduce its existing requirements contract with Forro *before* the post-search visit by IBM officials.

There is no causal link between these events and injury to Forro.

III. *Conclusion.*

The district court correctly concluded that there was no triable issue of material fact. Our prior opinion held that IBM could not be held liable for its participation in the search of Forro's facilities, and there was no showing of any other, non-privileged basis of liability. The summary judgment for IBM is

**AFFIRMED.**