**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John A. WALCZAK, Defendant-Appellant.**

No. 85–3044.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Feb. 21, 1986.

Kenneth Parker, Asst. U.S. Atty., Joanne Y. Maida, Seattle, Wash., for plaintiff-appellee.

Michael Pancer, San Diego, Cal., for defendant-appellant.

Before GOODWIN, ALARCON, and POOLE, Circuit Judges.

**PER CURIAM:**

Following his conviction for making false statements on a Customs declaration form, Walczak appeals the denial of four pretrial motions. He argues that the district court did not have jurisdiction, that the Customs officials' search of his person and luggage violated the fourth amendment, that he should have been granted an evidentiary hearing on the suppression issue, and that he should have been permitted access to transcripts of the grand jury proceedings. We affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 1984, Walczak, a United States citizen, was at the International Airport in Vancouver, British Columbia, Canada, about to board a non-stop flight to the United States. He completed Customs form 6059B, answering "no" to the statement "I am * * * carrying currency or monetary instruments over $5000 U.S. * * *." U.S. Customs officials searched him and found over $52,000 in U.S. currency in his carry-on luggage. After questioning by U.S. Customs officials and by the Royal Canadian Mounted Police, he was released. Several days later, he voluntarily surrendered to U.S. Customs officials in Blaine, Washington.[1]

A grand jury at Seattle, Washington indicted Walczak under 18 U.S.C. § 1001 (1982) (False Statements) and 18 U.S.C. § 3238 (1982) (Extraterritorial Jurisdiction). He pled not guilty, and moved to suppress the evidence of his false statement on the grounds that the search was not a valid border search and that the United States customs officials lacked authority to search him at the Vancouver airport in Canada. He requested an evidentiary hearing on the suppression issue. He also moved to discover transcripts of the grand jury proceedings, and to dismiss the indictment on the grounds that the district court lacked juris-

---

1. Blaine is adjacent to the U.S.-Canadian border and is a U.S. Customs port of entry. 19 C.F.R. § 101.3 (1985).

diction over the offense on foreign soil. The court denied all the motions. Walczak then entered a conditional plea of guilty, was fined $5000, given a three year sentence, which was suspended except for thirty days, and placed on probation.

This court has jurisdiction over Walczak's appeal pursuant to 28 U.S.C. § 1291 (1982). The issues on appeal are: (1) whether the district court in Western District of Washington had jurisdiction to try Walczak for an offense committed in Vancouver, Canada; (2) whether the customs officials' search of Walczak and his hand-carried luggage at the Vancouver airport constituted a lawful search analogous to an extended border search;[2] (3) whether the district court erred by denying Walczak's motion to suppress without holding an evidentiary hearing; and (4) whether Walczak was entitled to access to the grand jury transcripts.

## DISCUSSION

### I. Jurisdiction of the District Court

■ The jurisdiction of the district court over an offense is a question of law to be reviewed *de novo*. *See Dumdeang v. C.I.R.*, 739 F.2d 452, 453 (9th Cir.1984).

■ Walczak argues that a false statement made outside the borders is not punishable by a court of the United States. This argument fails for several reasons. First, section 1001 states that

Whoever, in any matter *within the jurisdiction of any department or agency of the United States* knowingly and wilfully falsifies, conceals or covers-up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same could contain any false, fictitious or fraudulent statement or entry, shall be fined not more than

$10,000 or imprisoned not more than five years, or both.

(Emphasis added.) The preclearance procedure is within the jurisdiction of the United States Customs Service, Department of the Treasury. Since the Department of the Treasury is a "department * * * of the United States," the language of § 1001 literally applies to false statements made on Customs forms without regard to the place where the offense occurred.

Second, the rationale of the decision in *United States v. Bowman*, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922), extends the reach of certain laws such as § 1001 to cover acts committed outside the United States by United States citizens.[3] *Bowman* stated that some offenses

are such that to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provisions in the law that the *locus* shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*Id.* at 98, 43 S.Ct. at 41. In the context of false statements on Customs declarations, § 1001 is such a law.

Third, at least as to Walczak, a United States citizen, the nationality principle of extraterritorial jurisdiction would apply: "American authority over [United States citizens] could be based upon the allegience they owe this country and its laws if the statute concerned * * * evinces a legislative intent to control actions within and without the United States." *United States v. King*, 552 F.2d 833, 851 (9th Cir.1976). Therefore the federal court system had jurisdiction to entertain the prosecution of Walczak for a violation of § 1001 committed in Canada.

---

**2.** The question of the functional equivalent of the border in the context of preclearance inspections is a matter of first impression in this circuit.

**3.** There is no constitutional bar to the extraterritorial application of penal laws. *United States v. King*, 552 F.2d 833, 850 (9th Cir.1976).

Section 3238 states, "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular state or district, shall be in the district where the offender * * * is arrested or first brought." Walczak surrendered to custom officials in the Western District of Washington, and therefore, that district court was the proper court in which to try him. Walczak's argument to the contrary therefore fails.

## II. The Extended Border Search

Where necessary to the determination of constitutional rights, this court will make an independent examination of the facts, the findings, and the record so that it can determine for itself whether established constitutional criteria have been respected. *United States v. Bates,* 533 F.2d 466, 468 (9th Cir.1976).

Walczak argues that the search violated the fourth amendment's proscription against unreasonable searches. Searches at the border are reasonable as an essential prerogative of a sovereign to protect its border. Therefore persons and vehicles crossing the border into this country may be searched without probable cause or a warrant. *United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977). The Supreme Court has held that searches may take place at the border or at its "functional equivalent." *Almeida-Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). This is because modern air travel renders it "unreasonable to expect that persons can [always] be searched at the exact moment they cross an international border." *United States v. Alfonso,* 759 F.2d 728, 734 (9th Cir.1985).

Modern advances in air transportation call for even more responsive protective procedures. Accordingly, in 1974, the United States and Canada entered into an executive agreement authorizing United States Customs "preclearance" operations at various Canadian airports, including Vancouver Airport. Agreement on Air Transport Preclearance, May 8, 1974, United States-Canada, art. II, 25 U.S.T. 763, T.I.A.S. No. 7825.

International agreements other than treaties may fall into any of three categories: congressional-executive agreements, executed by the President upon specific authorizing legislation from Congress; executive agreements pursuant to treaty, executed by the President in accord with specific instructions in a prior, formal treaty; and executive agreements executed pursuant to the President's own constitutional authority. *Dole v. Carter,* 444 F.Supp. 1065 (D.Kan.1977); *see* Restatement (Second) of Foreign Relations Law of the United States, §§ 119–121 (1965). Congress has not specifically authorized the President to conclude executive agreements such as this in the realm of civil aviation, but clearly did contemplate that the executive branch would negotiate "agreement[s] with foreign governments for the establishment or development of air navigation, including air routes and services." 49 U.S.C. § 1462 (1982). The agreement is not specifically of the second category, because while there is some relationship to the Convention on International Civil Aviation, Dec. 7, 1944, T.I.A.S. 1591, 61 Stat. 1180, the Convention does not literally authorize the President to enter into agreements implementing it.

The Supreme Court has recognized that of necessity the President may enter into certain binding agreements with foreign nations not strictly congruent with the formalities required by the Constitution's Treaty Clause [Art. II, § 2]. *Weinberger v. Rossi,* 456 U.S. 25, 30, 102 S.Ct. 1510, 1514, 71 L.Ed.2d 715 (1982). The authority to enter into executive agreements derives from the power over foreign relations accorded to the President by the Constitution. *See Guerra v. Guajardo,* 466 F.Supp. 1046 (S.D.Tx.1978), *aff'd,* 597 F.2d 769 (5th Cir. 1979).

If an agreement is within the President's power over foreign concords and relations, there seem to be no formal requirements as to how it must be made. It can be signed by the President or by his authority; it

may be by delegation by him to his Secretaries of State, Ambassadors, or lesser authorized government officials. *See generally* L. Henkin, *Foreign Affairs and the Constitution* 184 (1972). The Supreme Court has never held an executive agreement *ultra vires* for lack of Senate consent. *See id.* at 184. Since the 1974 Agreement was designed to implement the goals of the Convention, which itself is an Article II treaty, and since Congress contemplated that agreements having to do with civil aviation would be negotiated by the executive branch, the agreement in question is among those which the President may conclude on his own authority.

Because constitutionally valid executive agreements are to be applied by the courts as the law of the land, *United States v. Pink*, 315 U.S. 203, 230, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942), the Agreement on Air Transport Preclearance has the full force of law, and it governs in this case.

> The agreement provides that
> [t]he inspecting party may extend the application of any of its customs, immigration, agriculture and public health laws and regulations to aircraft, passengers, aircraft crew, baggage, cargo and aircraft stores in the territory of the other Party which are subject to preclearance to the extent consistent with the law of the country in which the inspection takes place.

Art. VII, at 767.

■ Various regulations define the activities which are to take place at preclearance facilities. "Preclearance is the tentative examination and inspection of air travelers and their baggage at foreign places where U.S. Customs personnel are stationed for that purpose." 19 C.F.R. § 24.-18(a) (1985). "Articles in baggage * * * shall be considered as accompanying a passenger if examined at an established preclearance station and the baggage is hand-carried * * *." 19 C.F.R. § 148.4(c) (1985). By allowing preclearance at Vancouver, the agreement authorizes U.S. Customs officials stationed at a preclearance facility to search persons bound for the United States as thoroughly as though the search were taking place at the border. Therefore the search of Walczak at the preclearance station did not violate the fourth amendment.

Walczak misunderstands the plain meaning of the language when he reads Article III of the agreement to require that U.S. Customs officials must have probable cause for a search. Article III states

> Where preclearance exists in the territory of a Party, that Party shall: * * * (d) provide appropriate law enforcement assistance to the other Party's inspectors including *inter alia,* upon request of the other Party's inspection officer: (i) search by a law enforcement officer of the territory where inspection takes place of any person and his effects which are subject to preclearance in accordance with this Agreement if, under the law of the country in which preclearance takes place, that law enforcement officer has authority and sufficient grounds to believe that the person to be searched is seeking to carry into the other country merchandise or other articles the possession of which constitutes an offense under the law of the country in which preclearance takes place * * *.

The party which requires "sufficient grounds" to search is the party in which preclearance occurs, in this case Canada. The agreement does not require U.S. Customs officials to have probable cause in order to search. Consequently, the search of Walczak was lawful despite the lack of a warrant or probable cause, and the district court properly denied the motion to suppress the fruits of that search.

At oral argument, Walczak for the first time contended that the persons who searched him may not have been U.S. Customs officials. This argument was not raised before the district court, and is even inconsistent with the statement of facts in Walczak's appellate brief, which refers to the searcher as a U.S. Customs official. It is well established that arguments which are not made to the district court need not

be considered on appeal.[4] *Forro Precision, Inc. v. International Business Machines Corp.,* 745 F.2d 1283, 1286 (9th Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2664, 86 L.Ed.2d 280 (1985). In any event, the identity of the searcher is thus conceded by the appellant.

### III. Denial of the Evidentiary Hearing

Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora,* 600 F.2d 1317, 1320 (9th Cir.), *modified on other grounds,* 609 F.2d 433 (1979). An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue. *United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir.1979).

Whether the Vancouver Airport is the functional equivalent of a border for persons intending to fly to the United States is a question of law. Thus the only relevant question of fact was whether Walczak intended to board a flight bound for the United States. In his Memorandum of Points and Authorities [in Support of Motion] to Suppress Evidence and Request Evidentiary Hearing, Walczak admitted that he was about to board a non-stop flight into the United States when he underwent customs processing. The uncontroverted fact that Walczak filled out Customs form 6059B is also evidence of his intent to enter the United States. Therefore, the record contains no controverted fact sufficient to require an evidentiary hearing, and the district court properly denied the motion for an evidentiary hearing.

### IV. Denial of Access to the Grand Jury Transcripts

A request for grand jury transcripts is also within the sound discretion of the trial court. *United States v. Mur-*

*ray,* 751 F.2d 1528, 1533 (9th Cir.1985). Rule of Criminal Procedure 6(e)(3)(C)(i) permits a court to order disclosure of matters occurring before a grand jury in specified situations. A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a "particularized need exists * * * which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). The "particularized need" standard was reaffirmed in *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), with a general suggestion in favor of disclosure.

Even under the permissive *Dennis* interpretation of the "particularized need" standard, the district court was correct in denying Walczak's motion to discover the grand jury transcripts. Walczak gave two reasons why he sought discovery of the transcripts: to show that the grand jury had no evidence that the district court had jurisdiction to prosecute, and to determine whether the testimony of law enforcement officers improperly summarized the testimony of other agents. Neither reason constitutes "particularized need." The first reason rests upon the incorrect premises that the district court did not have jurisdiction, and that the issue of jurisdiction was a question of fact for the grand jury. Walczak alleges no facts to support his second reason, which is therefore speculative. Consequently, the district court's denial of Walczak's motion to discover the grand jury transcripts was correct.

### CONCLUSION

For the foregoing reasons, the district court's denial of appellant's motions is AFFIRMED.

---

**4.** Moreover, even if it were properly before us, this argument does not support Walczak's case. If the searchers were not U.S. officials, there would be no state action upon which to base a fourth amendment violation.