UNITED STATES of America, Plaintiff,

v.

Alfredo MORAN–GARCIA, Defendant.

Crim. No. 91–0845–GT.

United States District Court,
S.D. California.

Nov. 15, 1991.

U.S. Atty. William Braniff and Asst. U.S. Atty. William D. Baldwin, San Diego, Cal., for U.S.

David Cohen of Federal Defenders of San Diego, Inc., for defendant.

## MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

GORDON THOMPSON, Jr., District Judge.

On October 29, 1991, defense counsel filed a motion on behalf of defendant ALFREDO MORAN–GARCIA requesting the suppression of statements. The defendant and counsel appeared before this Court for oral motions on November 12, 1991 at 2:00 p.m. Having fully considered this matter, including review of the papers filed by the parties, the authorities cited therein, and the arguments presented, the Court rules as follows:

## I

## FACTUAL BACKGROUND

On September 5, 1991, an undercover agent met at various times with defendant MORAN–GARCIA and his co-defendants for the purpose of purchasing five kilograms of cocaine. Following a pre-arranged arrest signal, agents arrested MORAN–GARCIA and his co-defendants. The Government alleges that an agent advised MORAN–GARCIA of his constitutional *Miranda* rights and that MORAN–GARCIA waived his right to remain silent. After this alleged waiver, MORAN–GARCIA spoke with DEA agents and confessed to the sale of cocaine.

Moran–Garcia has not filed an affidavit or declaration to support his motion to suppress statements. In addition, although defense counsel's moving papers request suppression of statements, these papers do not make factual allegations that defendant's *Miranda* rights were violated.

At the time set for the hearing of this motion, the Court advised defendant that it would not hold an evidentiary hearing on his motion to suppress statements because there were no affidavits or declarations filed to sufficiently place facts into issue. Defense counsel acknowledged that he was aware of the Court's policy and stated his objection to the Court's policy.

## II
## CONCLUSIONS OF LAW

It is well-settled that a custodial interrogation conducted to obtain incriminating statements must (1) be preceded by procedural safeguards and (2) follow from a knowing, intelligent and voluntary waiver of Fifth and Sixth Amendment rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, the Government bears the burden of establishing that *Miranda* has been complied with. *See United States v. Heldt,* 745 F.2d 1275, 1277 (9th Cir.1984) (*citing North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979)). The Government will not be required to fulfill this burden, however, until the defendant sufficiently places factual allegations before the Court. Cognizant of this principle, the Court has for some time followed a policy of requiring that declarations must be provided in support of certain criminal motions. The application of this rule in the present context results in the Court denying defendant's request for an evidentiary hearing.

### A. The Court's Rule Requiring Declarations

The arguments advanced by defense counsel at the hearing for this motion are similar to those that have been advanced by defense counsel on numerous occasions since the Court began this policy. It is based on this input, as well as on the variety of factual situations in which this issue has arisen, that the Court's policy has evolved to the form that it explicitly takes in the General Order which the Court separately issues today. The Rule adopted in the General Order states:

Rule GT–415. DECLARATIONS IN SUPPORT OF AND IN OPPOSITION TO CRIMINAL MOTIONS.

a) Declarations Required

Where a criminal motion requires a predicate factual finding, the motion shall be supported by a declaration. To contest the facts provided in support of such a motion, the opposition papers shall likewise be supported by a declaration, thereby placing material facts into dispute. The court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.

b) Contents of Declarations

Each declaration shall set forth, under penalty of perjury, all facts then known and upon which it is contended the motion should be granted or denied. Each declaration shall contain only facts that would be admissible under the Federal Rules of Evidence. Additionally, each declaration shall avoid conclusions of law and argument. Finally, each declaration shall show affirmatively that the declarant is competent to testify to the matters stated therein.

c) Timely Filing of Affidavits and Declarations

Affidavits and declarations submitted in support of and in opposition to criminal motions shall be filed in a timely manner in accordance with the filing deadlines set forth in Local Rules 415–4 and 415–5.

d) Availability of Declarants

Each declarant in support of and in opposition to criminal motions shall be made available for cross-examination at the hearing of the motion, unless the opposing party does not dispute the facts contained in the declaration.

Although counsel in this particular case could not argue that he was unaware of this policy, the Court acknowledges that counsel who practice less often in this Courtroom may be unaware of this policy. Indeed, on occasion the Court has allowed defense counsel to supplement moving papers at a later date in order to comply with the declaration requirement. It is precisely for this reason that the Court today publishes the General Order making its policy on this matter fully known to the public.

### B. The Court's Discretion to Hold Evidentiary Hearings

■ In fashioning its rule, the Court recognizes that the Constitution places some constraints on a court's management of its own docket. However, it is the opinion of

the Court that the Constitution does not require an evidentiary hearing when no affidavit or declaration has been provided to the Court to place facts into issue.

Consistent with the "well-settled principle that a district court has broad discretion to manage its own calendar," *United States v. Batiste*, 868 F.2d 1089, 1091 n. 4 (9th Cir.1989), the Ninth Circuit has repeatedly held that "[w]hether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir.1986). *See also United States v. Licavoli*, 604 F.2d 613 (1979) (same) (quoting *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.1979).

■ In developing the jurisprudence of evidentiary hearings, the Ninth Circuit has made clear that no quantum or quality of proof is sufficient to preclude a district court from holding an evidentiary hearing when it so chooses. *See Batiste*, 868 F.2d at 1091–1092. After all,

> [t]he only reason for a rule prohibiting the district court from holding a hearing ... would be to save court time or the parties' time. [Therefore, i]f the district court ... believes that it is worth taking the time to hold the hearing, [then the Ninth Circuit] will not preclude it from doing so.

*Id.* at 1092. The district court's authority to require a hearing, then, appears to be beyond dispute. The issue before the Court with respect to its policy of requiring declarations in support of motions is what quantum or quality of proof will *require* the district court to conduct an evidentiary hearing.

### 1. *Walczak and the court's jurisprudential concerns*

■ The Court's policy is based on the premise that the purpose of a pre-trial evidentiary hearing is to resolve a material factual dispute. Phrased differently, the hearing's purpose is to resolve inconsistent

portrayals of a fact, the resolution of which will bear on a court's decision. Absent materiality and inconsistency, no evidentiary hearing need be held. Before a court can identify the existence of a material, factual dispute, however, each party must properly place its portrayal of that fact before the court. Thus, in order for a court to conduct an evidentiary hearing, the parties must (1) properly place before the court (2) inconsistent portrayals of (3) a material fact.

#### a. *Reliability*

In recognition both of the rights of the accused and of the scarcity of judicial resources, the Ninth Circuit has fashioned a standard such that

> [a]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact ... are in issue.

*Walczak*, 783 F.2d at 857 (regarding validity of Fourth Amendment search). *See also Licavoli*, 604 F.2d at 621 (citing cases). The Ninth Circuit has not yet held precisely what it intends by the phrase "sufficiently definite, specific, detailed and nonconjectural." Accordingly, what quantum and quality of proof has been "sufficient" under *Walczak* has varied from judge to judge and from district to district.[1]

■ Clearly insufficient to make a proper showing under the standard enunciated in *Walczak* are boilerplate motions which lay no factual foundation whatsoever for the suppression they demand. *See Licavoli*, 604 F.2d at 621 ("[a] hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality") (citing *United States v. Losing*, 539 F.2d 1174, 1178 (8th Cir.1976)).

Clearly sufficient are sworn statements by individuals with personal knowledge.

---

1. *See, e.g.,* Criminal Rule 9 of the Central District of California (requiring both a declaration in support of any motion to suppress and the availability at hearing of all declarants); Criminal Rule 320–3 of the Northern District of California (requiring declarations both in support of and in opposition to "[m]otions presenting issues of fact"); Rule 430 of the Eastern District of California (no requirements identified).

After all, it is difficult to imagine what kind of available evidence, short of the live testimony sought through a hearing, could be more "definite, specific, detailed and nonconjectural" than a declaration or affidavit sworn to by a percipient witness.

Less sufficient than such sworn statements but more sufficient than boilerplate legal conclusions are the unsworn representations of counsel. On the one hand, these representations are useful insofar as they tend to identify the factual basis of the dispute with respect to which counsel seeks a hearing. In this regard, the more "specific" and the more "detailed" such representations are, the more useful they tend to be.

On the other hand, the unsworn representations of counsel are less trustworthy in that they are neither sworn nor firsthand. So untrustworthy are such statements considered in the context of trial that they are labeled argument and hearsay and consequently are rendered inadmissible as evidence. As at trial, such statements also are untrustworthy in the context of motions. Put differently second-hand, unsworn statements are "[in]definite" and "[ ]conjectural."

The reliability of such statements in any given case would be of less consequence to the Court were it not constrained by the press of a crowded and urgent docket of cases, both criminal and civil. The Court, however, is so constrained. Therefore, it elects to adhere to a policy such that no evidentiary hearing need be held when the evidentiary motion requesting such a hearing is not supported by the properly drawn and timely filed sworn statement of an individual who has personal knowledge of the statement's representations.[2]

The Court notes, in addition, that the jurisprudential concerns motivating this policy are neither new nor inconsequential. As Judge Mansfield of the Southern District of New York noted as long ago as 1967,

> [t]he conduct of defendants' counsel in asserting ["serious charges"] solely upon his own general information and belief rather than upon statements of fact sworn to by persons having personal knowledge, evidences a lack of appreciation for his responsibilities as an officer of this Court. Experience shows that unless such serious charges are initiated upon the sworn statement of persons having personal knowledge of the facts, a great deal of time of the parties and the Court is frequently wasted upon unnecessary, expensive and protracted suppression hearings, all for the reason that the attorney demanding suppression merely upon his own say-so often discovers only at the hearing that he has been misled by unsworn representations of his clients, which they would be unwilling to swear to in an affidavit, particularly if they were questioned closely by their counsel and warned of the consequences of perjury.

*United States v. Garcia,* 272 F.Supp. 286, 290 (S.D.N.Y.1967).[3]

---

**2.** Courts routinely impose jurisprudential constraints such as this in ways that are designed to channel, but not compromise, the exercise of defendants' rights. A conspicuous example of rights-channeling rules is implicit in the doctrine of "waiver." The Ninth Circuit has noted that "most constitutional rights are waivable." *See Adams v. Carroll,* 875 F.2d 1441, 1443 n. 2 (9th Cir.1989) (enforcing criminal defendant's waiver of right to assistance of counsel). *See, e.g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (criminal defendant may waive right to assistance of counsel); *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (criminal defendant may waive right to a public trial; right to be tried in the state and district where the crime was committed; right to be confronted by witnesses against him; and right to trial by jury).

Moreover, waiver need not be either explicit or intentional. Instead it may be implicit either in a defendant's actions, *see, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (valid consent to search constitutes waiver of Fourth and Fourteenth Amendment rights), or in a defendant's inaction. *See, e.g.,* Wayne R. LaFave, Search and Seizure § 11.1(a), at 188–195 (2d ed. 1987) ("[a] defendant in a criminal case need not be allowed to pursue an objection to evidence on Fourth Amendment grounds unless his objection was interposed in a timely fashion") (citing cases).

**3.** Judge Mansfield made this statement in response to defense counsel's submission of his own affidavit challenging the legality of a search. The statement is dicta only because the

### b. *Inconsistency*

■ Further, a court need hold no evidentiary hearing unless the matters reliably placed "in issue" (e.g. before the court) by the movant, per *Walczak*, are reliably "contested" by the non-movant, per *Walczak*. The purpose of a pre-trial evidentiary hearing, after all, is to resolve a dispute. Thus where there is no evidentiary dispute, there need be no evidentiary hearing.

In this regard, the Court also notes that it is as concerned with reliability in assessing the existence of a bona fide dispute as it is in taking notice of the inconsistent representations which underlie that dispute. For this reason, the Court chooses to adhere to a policy whereby in order to adequately contest the representations made in a movant's declaration, the non-movant, too, must file a declaration.[4]

### c. *Materiality*

■ Finally, the Court also observes that it need conduct no evidentiary hearing, even with respect to a dispute properly before it, unless the resolution of that dispute may make a material difference in the Court's consideration of the underlying motion. After all, where a dispute is immaterial, its consideration needlessly consumes the Court's, defendants', witnesses' and counsels' valuable time.[5]

### 2. *Simmons and the impact on defendants' Fifth Amendment rights*

■ In selecting a policy designed to effectively preserve scarce judicial resources, the Court does not sacrifice defendants' Fifth Amendment right against compelled self-incrimination. It is true that often the only individual who both (a) has personal knowledge of material facts and (b) is available to the defense is the defendant himself. Moreover it also is true that when a defendant desiring an evidentiary hearing is the only suitable declarant, it becomes incumbent upon the defendant to file a testimonial statement—even one which may include incriminating evidence. The filing of such a statement, however, will not interfere with the defendant's Fifth Amendment right. For as the Supreme Court has held,

> when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

*Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).[6] *See also Pettyjohn v. United States*, 419 F.2d 651, 653 n. 5 (1969) (extending the holding in *Simmons* to motions alleging Fifth Amendment grounds for suppression).

### 3. *Batiste and the relationship between constitutional rights and jurisprudential principles*

At the hearing of this motion, defense counsel argued, as have other defense counsel in previous cases, that the Ninth Circuit case of *United States v. Batiste* distinguishes between Fifth Amendment motions to suppress statements and Fourth

---

judge exercised his discretion, "in view of the seriousness of the charges," *Garcia*, 272 F.Supp. at 290, to grant a hearing notwithstanding the motion's inadequacy.

**4.** Counsel will note that the policy as printed in the General Order has been modified from this Court's past practice: (1) the non-movant must now provide declarations to counter the movant's declarations and (2) the movant must file declarations in a timely fashion. As MORAN–GARCIA never placed facts before the Court for the Government to dispute, however, this change in policy does not effect MORAN–GARCIA's motion.

**5.** In recognition of the fact that from time to time unanticipated circumstances arise in the trial court arena, the court reserves its authority, per *Batiste*, to conduct evidentiary hearings even in the absence of an adequate sworn record. The court's express reservation of authority in this regard, however, should in no way be construed as readiness to depart from the rule set forth in the General Order.

**6.** Note that, in certain circumstances, a defendant's suppression-hearing testimony may be admissible at trial for impeachment purposes. *See Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *But see also New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979).

Amendment motions to suppress evidence. The argument is that the level of proof triggering the right to an evidentiary hearing is lower with respect to the suppression of statements than it is with respect to the suppression of evidence. The basis for this argument is a short textual passage from *Batiste* together with a modifying footnote. In the textual passage the Ninth Circuit rejected

> a per se rule that an evidentiary hearing must be held on the issue of probable cause to arrest whenever a defendant requests one. Such a rigid rule is not necessary to protect a defendant's Fourth Amendment rights.

*Batiste*, 868 F.2d at 1092.

Although the court thus explicitly held that Fourth Amendment protection does not entitle defendants to evidentiary hearings on demand, it did not hold that Fifth Amendment protection *does* require such an entitlement. Rather, in a footnote modifying the textual passage, the court noted

> the distinction between the Fourth Amendment probable cause requirement for warrantless arrests and the Fifth Amendment prohibition against coerced confessions. With respect to the Fifth Amendment voluntariness requirement, "[a] defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Jackson v. Denno*, 378 U.S. 368, 380 [84 S.Ct. 1774, 1787, 12 L.Ed.2d 908] (1964). Here, the government has not challenged the necessity for a hearing on the voluntariness issue. On the other hand, while the government has the burden of proving probable cause for a warrantless arrest, there is no case law that suggests that a defendant has an

automatic constitutional right to an evidentiary hearing on the issue of probable cause.

*Id.* n. 5 (citations omitted).

As the panel noted, the scope of the appeal in *Batiste* concerned only the Fourth Amendment and whether the district court abused its discretion in granting a hearing over the government's objection. *Id.* at 1091. Accordingly, the court's fleeting reference to the Fifth Amendment is dicta only and, as such, is non-binding. Notwithstanding the limited precedential value of the passage at issue, however, this Court is mindful of Ninth Circuit opinion, be it holding or dicta. For this reason, the Court inquires further into the meaning properly ascribable to footnote 5.

Analysis of footnote 5 and, in particular, its reference to *Jackson v. Denno* renders it readily apparent that, in quoting the Supreme Court's opinion, the Ninth Circuit intended nothing more than a restatement of pre-existing law. The quotation itself is directly cited. The citation is unmodified by editorial signals. Stripped to its essentials, then, footnote 5 cites Supreme Court precedent for the proposition that a defendant making the designated objection is entitled to a fair hearing.

Casting the Supreme Court's holding in slightly different language, the Ninth Circuit characterized the entitlement recognized in *Jackson* as "an automatic constitutional right to an evidentiary hearing." *See Batiste*, 868 F.2d at 1092 n. 5.[7] Embracing this characterization, defense counsel appearing in this Court regularly contend that Fifth Amendment challenges entitle their clients to evidentiary hearings on demand. Common sense and jurisprudential principles of sound court management, however, indicate that counsel's conten-

---

7. The Ninth Circuit panel advanced this characterization indirectly. Having quoted *Jackson,* the court further commented that, "on the other hand ... no case law ... suggests ... an automatic constitutional right to a[ Fourth Amendment] evidentiary hearing." *See Batiste,* 868 F.2d at 1092 n. 5. As a result, the dicta of *Batiste* does indeed appear to stand for the proposition that in contradistinction to Fourth Amendment objections to the admissibility of physical evidence, Fifth Amendment objections to the admissibility of defendants' statements trigger an automatic, constitutional right to an evidentiary hearing. Intervening language in footnote 5 renders the nexus between this statement and the *Jackson* citation less precise than it might otherwise be. Nevertheless, close analysis suggests that it is the quotation from *Jackson* which the statement quoted above was intended to modify.

tions would provide for unsound policy, are ill-rooted in *Jackson* and cannot have been what the Ninth Circuit intended.

Counsels' position would provide for unsound policy because it fails to take into account the kinds of jurisprudential constraints recognized elsewhere in *Batiste* and in the related case law. *See, e.g., Batiste,* 868 F.2d at 1092 ("ultimate responsibility for the effective working of the adversary system rests with the trial judge;" noting relevance of time constraints in trial court's exercise of discretion in granting evidentiary hearings) (citing Fed.R.Evid. 611(a) Notes of Advisory Committee on Proposed Rules (a)); *United States v. Garcia,* 272 F.Supp. 286 (S.D.N.Y. 1967).

Taken to its logical extreme, counsels' position would require a court to hear evidence on nothing more than counsel's assertion of the categorical right to a hearing. Not so much as even an allegation of coercion would be necessary in order to secure a hearing. Instead, counsel could commence witness questioning without even first identifying which factual issues were in dispute and satisfying the court that the issues were material and the disputes genuine. Concomitantly, a court would be required to hear such testimony without first having sufficient information even to determine the proper scope of questioning. Moreover, defense counsel's objection would trigger the right to a hearing whenever asserted—whether before, during or even after trial. Read in a vacuum, untempered by common sense and jurisprudential principles of sound court administration, this is precisely what counsels' interpretation of the dicta in *Batiste*'s footnote 5 would signify.

Of course, such a situation would be as ridiculous as it would be intolerable. Notwithstanding those aspects of this subject as to which counsel and the Court might disagree, nobody would dispute the need for court supervision of witness examination or for the imposition of reasonable deadlines beyond which rights are deemed waived. These are judicially-imposed requirements rooted in the necessity for sound court administration. Similarly, the requirement that defendants support their motions for evidentiary hearings with adequate indicia of reliability also is rooted in the necessity for sound court administration. Since courts are expected to routinely impose such requirements, it cannot be said that constitutional rights categorically trump jurisprudential rules.

Precisely for this reason, counsels' interpretation of *Batiste*'s characterization of *Jackson* cannot be correct. For neither the Supreme Court nor the Ninth Circuit could ever have intended to so utterly subordinate the dictates of sound court management to those of the Constitution.

A close reading of the Supreme Court's opinion in *Jackson* reveals that that case did not implicate the quality of proof necessary in order to trigger the constitutional right to a hearing. Rather, the Court in *Jackson* concerned itself with the quality of the hearing itself. In that case, the defendant challenged a New York state statute which permitted the trial judge to delegate to the jury at the close of all evidence the task of determining a confession's voluntariness. The Court held that this procedure violated the Due Process clause of the Fourteenth Amendment because it neither "afford[ed] a reliable determination of ... voluntariness" nor "adequately protect[ed the defendant's] right to be free of a conviction based upon a coerced confession." *See Jackson,* 378 U.S. at 377, 84 S.Ct. at 1781. In the context of this holding, the Supreme Court then iterated the statement on the basis of which counsel in this Court routinely seek hearings on demand:

A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.

*Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 1782, 12 L.Ed.2d 908 (1964).

Neither the facts nor the arguments in *Jackson* implicated jurisprudential concerns. Indeed there is no indication in the Court's opinion in *Jackson* that the scope

of any counsel's inquiry into the circumstances of the defendant's confession were at all limited by the trial judge. Accordingly, when the above-quoted statement is read in the context of the holding which it modified, it becomes patently clear that of primary importance to the Court in its *Jackson* opinion was the integrity and trustworthiness of evidentiary hearings, not the circumstances under which defendants are entitled to them.

It is incomprehensible that the Supreme Court in *Jackson* or the Ninth Circuit in *Batiste* could have intended· to render the orderly administration of justice as thoroughly subordinate to the Constitution as counsel in this court have argued.

### C. MORAN–GARCIA'S Motion to Suppress Statements

 Defendant MORAN–GARCIA has failed to place before the Court any facts that would require a response by the Government. Indeed, the brief submitted by defense counsel is akin to boilerplate motions that lay no factual foundation. To the extent, however, that the moving papers do make factual assertions, the Court finds that, as the unsworn representations of counsel, the assertions are too indefinite and conjectural to require the government to respond. As a result, defendant MORAN–GARCIA's motion to suppress statements is denied.

This holding is consistent with the Court's existing policy, of which defense counsel was aware. Under these circumstances, the Court holds that it is within its discretion to deny defendant's request for an evidentiary hearing, as the Court refuses to hold an evidentiary hearing when facts have not been placed adequately before it.

### III

### CONCLUSION

For the foregoing reasons, the Court denies, without an evidentiary hearing, defendant MORAN–GARCIA's motion to suppress statements.

IT IS SO ORDERED.